1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Acting Senior Assistant Attorney General
4  JONATHAN L. WOLFF
   Supervising Deputy Attorney General
5  MICHAEL J. QUINN, State Bar No. 209542
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
7   Telephone: (415) 703-5726
    Fax: (415) 703-5843
8   Email: Michael.Quinn@doj.ca.gov

9  Attorneys for Defendants Horel, Tucker and Johnson

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

| | |
|---|---|
| **ERIK RAY SELF,** | C 07-5347 MMC |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **ROBERT HOREL, Warden, R.L. JOHNSTON, Captain, R. TUCKER, Correctional Officer,** | |
| Defendants. | |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

                                                                                    **Page**

MEMORANDUM OF POINTS AND AUTHORITIES                                                    2

    INTRODUCTION                                                                   2

    STATEMENT OF THE ISSUE                                                         2

    STATEMENT OF FACTS                                                             3

        A.   The Parties                                                  3

        B.   "The Practical Guide to Drawing" and Section 3006            3

        C.   Plaintiff's Administrative Appeals                           4

    ARGUMENT                                                                       5

        A.   The Legal Standard for Summary Judgment Under Federal Rule of Civil Procedure 56(c).   5

            1.   Rational Connection                                6

            2.   Alternative Avenues                                7

            3.   Impact on Others                                   8

            4.   Exaggerated Response

        B.   In *Nelson v. Woodford*, the Court Concluded that Section 3006 is Constitutional.   6

            1.   Rational Connection                                6

            2.   Alternative Avenues                                7

            3.   Impact on Others                                   8

            4.   Exaggerated Response                               9

        C.   Section 3006 Was Properly Applied in this Case.             10

        D.   Defendants are Entitled to Qualified Immunity.              11

            1.   Plaintiff Has Not Shown that Defendants' Actions Violated a Constitutional Right.   12

            2.   Defendants are Entitled to Qualified Immunity Because it Would Not Have Been Clear to Reasonable Officials that Their Conduct was Unlawful.   12

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                E. R. Self v. R. Horel, et al.
C 07-5347 MMC

i

**TABLE OF CONTENTS  (continued)**

1

Page

2

E.   Because Defendant Horel Was Not Directly Involved in the Decision to
Prevent   Plaintiff From Receiving "The Practical Guide to Drawing," a
Section 1983 Action Cannot Proceed Against Him.                              13

3

4

CONCLUSION                                                                         13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                    E. R. Self v. R. Horel, et al.
                                                                               C 07-5347 MMC

ii

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Anderson v. Creighton*
483 U.S. 635 (1987)                                                                11

5

*Anderson v. Liberty Lobby, Inc.*
6  477 U.S. 242 (1986)                                                            5

7  *Burns v. Reed*
500 U.S. 478 (1991)                                                               11

8

*Celotex Corp. v. Catrett*
9  477 U.S. 317 (1986)                                                            5

10  *Harlow v. Fitzgerald*
457 U.S. 800 (1982)                                                              11

11

*Jeffers v. Gomez*
12  267 F.3d 895 (9th Cir. 2001)                                                12

13  *Mauro v. Arpaio*
188 F.3d 1054 (9th Cir. 1999)                                                 6-10

14

*Mitchell v. Forsyth*
15  472 U.S. 511 (1985)                                                          11

16  *Nelson v. Woodford*
No. C-04-3684 CRB (PR), 2006 U.S. Dist. Lexis 11120
17  (N.D. Cal. Mar. 2, 2006), *aff'd* 249 Fed. Appx. 529 (9th Cir. 2007)      2, 3, 5-14

18  *Ruffin v. County of Los Angeles*
607 F.2d 1276 (9th Cir. 1979)                                                 5

19

*Saucier v. Katz*
20  533 U.S. 194 (2001)                                                         11, 12

21  *Scott v. Harris*
127 S.Ct. 1769 (2007)                                                          5, 6

22

*Steckl v. Motorola, Inc.*
23  703 F.2d 392 (9th Cir. 1983)                                               5

24  *Taylor v. List*
880 F.2d 1040 (9th Cir. 1989)                                                 13

25

*Thornburgh v. Abbott*
26  490 U.S. 401 (1989)                                                        6, 7, 10

27  *Turner v. Safley*
482 U.S. 78 (1987)                                                             6, 7, 9

28

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                    E. R. Self v. R. Horel, et al.
C 07-5347 MMC

iii

**TABLE OF AUTHORITIES  (continued)**

                                                                          **Page**

**Constitutional Provisions**

United States Constitution
        First Amendment                                                2, *passim*


**Statutes**

California Code of Regulations, Title 15
        § 3006                                                        3, *passim*
        § 3006(c)(17)                                                      2, 3
        § 3006(c)(17)(A)                                               2, 3, 10
        § 3006(c)(17)(B)                                                      8
        § 3006(c)(17)(B)(2)                                                 10
        § 3600                                                           2, 13

United States Code, Title 42
        § 1983                                                             13


**Court Rules**

Federal Rules of Civil Procedure
        rule 56(c)                                                        1, 5

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                E. R. Self v. R. Horel, et al.
                                                                       C 07-5347 MMC

iv

1 | EDMUND G. BROWN JR.
  | Attorney General of the State of California
2 | DAVID S. CHANEY
  | Chief Assistant Attorney General
3 | ROCHELLE C. EAST
  | Acting Senior Assistant Attorney General
4 | JONATHAN L. WOLFF
  | Supervising Deputy Attorney General
5 | MICHAEL J. QUINN, State Bar No. 209542
  | Deputy Attorney General
6 | 455 Golden Gate Avenue, Suite 11000
  | San Francisco, CA 94102-7004
7 | Telephone: (415) 703-5726
  | Fax: (415) 703-5843
8 | Email: Michael.Quinn@doj.ca.gov

9 | Attorneys for Defendants Horel, Tucker and Johnson

10

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14

15 | **ERIK RAY SELF,** | C 07-5347 MMC

16 | Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

17 | v.

18 | **ROBERT HOREL, Warden, R.L. JOHNSTON, Captain, R. TUCKER, Correctional Officer,**

19 | Defendants.

20

21 | TO PLAINTIFF ERIK RAY SELF:

22 | PLEASE TAKE NOTICE THAT Defendants Horel, Tucker and Johnson (Defendants)

23 | move this Court for summary judgment under Rule 56(c) of the Federal Rules of Civil

24 | Procedure, on the grounds that there is no genuine issue as to any material fact, that they are

25 | entitled to judgment as a matter of law, and that they are entitled to qualified immunity.

26 | This motion is based upon this notice of motion and motion, the memorandum of points and

27 | authorities, the supporting declaration and exhibits, this Court's file, and any matters properly

28 | before this Court.

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.          E. R. Self v. R. Horel, et al.
C 07-5347 MMC

1

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

3    In this case, Plaintiff contends that the decision by Pelican Bay officials to deny him access

4    to a copy of "The Practical Guide to Drawing," a book that contains photographs of nude male

5    and female models, infringed upon his First Amendment rights.

6    The California Code of Regulations provide that inmates cannot possess sexually explicit

7    images that depict frontal nudity in the form of personal photographs or other pictorial format.

8    Cal. Code. Regs tit. 15, § 3006(c)(17) (2008) (Section 3600). The definition of "sexually explicit

9    material" includes items that show frontal nudity, including the exposed female breast and

10    genitalia of either gender. *Id.* § 3006(c)(17)(A). Because it violated Section 3600, Pelican Bay

11    officials refused to provide Plaintiff with a copy of "The Practical Guide to Drawing."

12    In *Nelson v. Woodford*, No. C-04-3684 CRB (PR), 2006 U.S. Dist. Lexis 11120, *8-9 (N.D.

13    Cal. Mar. 2, 2006), *aff'd* 249 Fed. Appx. 529 (9th Cir. 2007), the district court concluded that

14    California Code of Regulations title 15, section 3006(c)(17), the same policy that is challenged in

15    this case, was constitutional. The court found, among other things, that giving inmates

16    unrestricted access to sexually explicit materials would have a negative impact on prison

17    discipline and security, as it could lead to the sexual harassment of female correctional officers

18    and violence among inmates. *See id.* at *9-12.

19    The plaintiff in *Nelson* was seeking to obtain several issues of *Esquire* magazine that

20    contained photographs of female models with exposed breasts. *See id.* at *7-8. Because the

21    book in this case, which features numerous photographs of male and female frontal nudity, is far

22    more sexually explicit than the publication at issue in *Nelson*, there is no triable issue regarding

23    whether "The Practical Guide to Drawing" contains sexually explicit material in violation of

24    Section 3600. Accordingly, summary judgment should be granted in favor of Defendants.

25

## STATEMENT OF THE ISSUE

26    Did the decision by Pelican Bay officials to deny Plaintiff access to a book entitled "The

27    Practical Guide to Drawing" because it contained photographs depicting full frontal nudity

28    violate Plaintiff's First Amendment rights?

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                    E. R. Self v. R. Horel, et al.
C 07-5347 MMC

2

1                           **STATEMENT OF FACTS**

2  **A.    The Parties**

3        Plaintiff is an inmate in the custody of the California Department of Corrections and

4  Rehabilitation (CDCR), and is currently housed at Pelican Bay State Prison in Crescent City,

5  California. (Compl. ¶ 4.)

6        Defendant Tucker is a Property Officer in the Security Housing Unit at Pelican Bay who

7  initially reviewed several books that Plaintiff ordered from an outside vendor, including "The

8  Practical Guide to Drawing." (Decl. of R. Tucker Supp. Defs.' Mot. Summ. J. (Decl. R. Tucker)

9  ¶ 3.) She determined that the book was contraband because at least seven pages depicted frontal

10 nudity, including male and female genitalia. (*Id.*, Ex. A at AGO-001 to AGO-007.)

11       The other named Defendants in the case are also Pelican Bay officials. Defendant Johnson

12 is a Facility Captain in Pelican Bay's Security Housing Unit, while Defendant Horel is Pelican

13 Bay's Warden. (Compl. ¶¶ 5, 6.)

14 **B.    "The Practical Guide to Drawing" and Section 3006**

15        On April 19, 2007, Plaintiff was informed via institutional mail that two books he had

16 ordered, "The Practical Guide to Drawing" and "Strictly Taboo," were not permitted in the prison

17 under section 3006(c)(17) of Title 15 of the California Code of Regulations, a provision that was

18 upheld as constitutional in *Nelson v. Woodford*, No. C-04-3684 CRB (PR), 2006 U.S. Dist. Lexis

19 11120 (N.D. Cal. Mar. 2, 2006), *aff'd* 249 Fed. Appx. 529 (9th Cir. 2007). (Compl. ¶ 8.) That

20 provision of the California Code of Regulations states that inmates are not permitted to possess

21 "[s]exually explicit images that depict frontal nudity in the form of personal photographs,

22 drawings, magazines, or other pictorial format." Cal. Code. Regs tit. 15, § 3006(c)(17) (2008).

23 The regulation defines sexually explicit material as "material that shows the frontal nudity of

24 either gender, including the exposed female breast(s) and/or the genitalia of either gender." Cal.

25 Code. Regs tit. 15, § 3006(c)(17)(A) (2008). According to Defendant Tucker, "The Practical

26 Guide to Drawing" violated Section 3006 because it contained sexually explicit images,

27

28

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                    E. R. Self v. R. Horel, et al.
                                                                    C 07-5347 MMC

3

1   including male and female frontal nudity.[1] (Compl. Ex. 1.)

2   **C.    Plaintiff's Administrative Appeals**

3       On April 26, 2007, Plaintiff submitted an inmate appeal which claimed that Section 3006

4   had been "misapplied" because "The Practical Guide to Drawing" was an "educational/art book."

5   (Compl. Ex. 4.) Plaintiff's appeal was denied by Defendant Tucker at the informal level on May

6   7, 2007. (Compl. ¶ 11.) Defendant Tucker wrote that Plaintiff was not entitled to receive the

7   book because, among other things, it contained frontal nudity in violation of Section 3006. (*Id.*)

8       After challenging the informal decision, Plaintiff's appeal was denied at the first formal

9   level on May 23, 2007. (Compl. Ex. 1.) That decision observed that "The Practical Guide to

10  Drawing" violated Section 3006 by depicting "the frontal nudity of both the female and the male

11  body, [and] exposing full detailed genitalia of both sexes in the form of photographs, not artistic

12  renderings." (*Id.*) On June 14, 2007, Plaintiff's appeal was denied at the second level by

13  Defendant Horel, who stated that the book was "appropriately disallowed" because it contained

14  sexually explicit images in violation of Section 3006. (*Id.*)

15      Following the rejection of the appeal at the second level, Plaintiff sought review at the

16  Director's level. The September 26, 2007 denial at the Director's level noted that Plaintiff had

17  failed to provide "substantive information to counter the institution's decision" regarding the

18  denial of access to the book. (Compl. Ex. 1.)

19      The decision at the Director's level exhausted Plaintiff's administrative appeals. On

20  October 19, 2007, Plaintiff filed his "Complaint Under the Civil Rights Act," alleging that the

21  denial of the book violated his First Amendment rights.

22  ///

23  ///

24  ///

25  ///

26

27

---

28      1.  Plaintiff is not challenging Defendants' determination that "Strictly Taboo" violated
    Section 3006. (Compl. ¶ 8.)

1                                      **ARGUMENT**

2    **A.    The Legal Standard for Summary Judgment Under Federal Rule of Civil Procedure**
         **56(c).**
3

4            Summary judgment is appropriate "where there is no genuine issue as to any material fact,

5    and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts

6    are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

7    242, 248 (1986).  The party moving for summary judgment bears the initial burden of identifying

8    those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a

9    genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the

10   moving party meets its initial burden, entry of summary judgment is mandated where the

11   nonmoving party fails to "set forth specific facts showing that there remains a genuine issue for

12   trial" and evidence "significantly probative as to any [material] fact claimed to be disputed."

13   *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir. 1983), *citing Ruffin v. County of Los*

14   *Angeles,* 607 F.2d 1276, 1280 (9th Cir. 1979).  If the evidence presented by the nonmoving party

15   is "merely colorable, or is not sufficiently probative, summary judgment may be granted."

16   *Anderson,* 477 U.S. at 249-50.  There is no triable issue of fact unless the nonmoving party

17   submits sufficient evidence for a jury to return a verdict in the nonmoving party's favor.  *Id.* at

18   250.

19          In *Scott v. Harris,* 127 S.Ct. 1769, 1776 (2007), the Supreme Court clarified the legal

20   standard for summary-judgment motions, writing that "when opposing parties tell two different

21   stories, one of which is blatantly contradicted by the record, so that no reasonable jury could

22   believe it, a court should not adopt that [blatantly contradicted] version of the facts for purposes

23   of ruling on a motion for summary judgment."  In this case, Plaintiff claims that Defendants'

24   decision to deny him access to "The Practical Guide to Drawing" violated his rights under the

25   First Amendment because it is merely an art manual that he plans to use for educational

26   purposes. (Compl. ¶ 9.)  However, the book actually contains sexually explicit images that fall

27   within the purview of Section 3600, which the court has previously found to be constitutional.

28   *See Nelson v. Woodford*, No. C-04-3684 CRB (PR), 2006 U.S. Dist. Lexis 11120 (N.D. Cal. Mar.

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                           E. R. Self v. R. Horel, et al.
                                                                          C 07-5347 MMC

1    2, 2006), *aff'd* 249 Fed. Appx. 529 (9th Cir. 2007). Because Plaintiff's allegations that the book

2    is simply an educational guide is "utterly discredited" by the record, Defendants are entitled to

3    summary judgment. *Scott*, 127 S.Ct. at 1776.

4    **B.    In *Nelson v. Woodford*, the Court Concluded that Section 3006 is Constitutional.**

5        Prison regulations limiting inmates' access to publications or other information must be

6    reasonably related to legitimate penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401,

7    413 (1989) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In *Turner*, the Supreme Court

8    identified four factors to consider when determining whether a regulation is reasonably related to

9    legitimate penological interests: (1) whether there is a valid, rational connection between the

10   policy and the legitimate governmental interest put forward to justify it; (2) whether there are

11   alternative means of exercising the right; (3) whether the impact of accommodating the asserted

12   constitutional right will have a significant negative impact on prison guards, other inmates and

13   the allocation of prison resources generally; and (4) whether the policy is an "exaggerated

14   response" to the prison's concerns. *See Turner*, 482 U.S. at 89-90.

15       In *Nelson v. Woodford*, No. C-04-3684 CRB (PR), 2006 U.S. Dist. Lexis 11120, *9 (N.D.

16   Cal. Mar. 2, 2006), *aff'd* 249 Fed. Appx. 529 (9th Cir. 2007), the court analyzed Section 3006

17   under the four factors set forth in *Turner*. It concluded that the regulation was reasonably related

18   to legitimate penological interests and therefore constitutional. *See id*. A review of the court's

19   decision in *Nelson*, which involved an inmate who alleged that he was improperly denied, among

20   other things, copies of *Esquire* magazine that contained frontal nudity, confirms that Section

21   3006 was properly applied in this case. *See id*. at *8-*9.

22       **1.    Rational Connection**

23       In considering whether there is a rational connection between a challenged policy and a

24   legitimate governmental interest, a court must determine whether the governmental objective

25   underlying the policy is (1) legitimate, (2) neutral, and (3) whether the policy is "rationally

26   related to that objective." *See Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999).

27       In *Mauro*, the en banc court of the Ninth Circuit found that a jail policy that banned

28   "materials that show frontal nudity," including "personal photographs, drawings, and magazines

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                    E. R. Self v. R. Horel, et al.
                                                                    C 07-5347 MMC

6

1  and pictorials that show frontal nudity," was constitutional. *Id.* at 1059-63. The *Nelson* court

2  found that Section 3006 satisfied the first *Turner* factor because "like the objectives of the policy

3  at issue in *Mauro*," Section 3006 sought to "aid in the legitimate penological interests of

4  maintaining the safety and security of the prisons, rehabilitating inmates, reducing sexual

5  harassment of correctional officers and preventing a hostile work environment." *Nelson*, 2006

6  U.S. Dist. Lexis at *9.

7          The *Nelson* court also noted that a regulation restricting certain publications would be

8  considered "neutral" if prison administrators drew distinctions between publications solely on the

9  basis of their potential implications for prison security. *See id.* at *10. In *Mauro*, the Ninth

10  Circuit held that the ban on sexually explicit material that depicted frontal nudity was "neutral"

11  because jail administrators drew a distinction between materials solely on the basis of the

12  materials' potential effect on the jail's legitimate objectives, such as maintaining jail security.

13  *See Mauro*, 188 F.3d at 1059-60. The *Nelson* court concluded that "like the policy at issue in

14  *Mauro*," there was a valid, rational connection between Section 3006 and the legitimate

15  governmental interests put forward to justify it, namely, maintaining security and reducing the

16  sexual harassment of female officers. *See Nelson*, 2006 U.S. Dist. Lexis at *10.

17      **2.      Alternative Avenues**

18          The second factor that must be considered in determining the reasonableness of a policy's

19  restrictions on constitutional rights is whether there are alternative means of exercising the right

20  that remain open to the inmates. *See Mauro*, 188 F.3d at 1061. In applying this factor, "the right

21  in question must be viewed sensibly and expansively." *Id.* (quoting *Thornburgh*, 490 U.S. at

22  417.) Where other avenues remain available for the exercise of the asserted right, courts should

23  be particularly conscious of the "measure of judicial deference owed to corrections officials . . .

24  in gauging the validity of the regulation." *See id.* (quoting *Turner v. Safley*, 482 U.S. 78, 90

25  (1987).

26          The *Nelson* court concluded that Section 3006 passed the second prong of the *Turner* test

27  because like the policy at issue in *Mauro*, which did not ban sexually explicit articles or

28  photographs of clothed females, Section 3006 did not ban all sexually explicit materials from

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                                E. R. Self v. R. Horel, et al.
                                                                                C 07-5347 MMC

1    inmates. *See Nelson*, 2006 U.S. Dist. Lexis at *11. An administrative bulletin from the

2    Department of Corrections and Rehabilitation advised prison staff that the ban on sexually

3    explicit materials "did not include sexually explicit letters, articles or photographs of clothed

4    person(s) . . . ." *Id.* Moreover, section 3006(c)(17)(B) allowed inmates to possess "certain

5    sexually explicit educational, medical/scientific, and artistic materials." *Id.* According to the

6    *Nelson* court, Section 3006 "provide[d] ample alternative means for prisoners to exercise their

7    First Amendment rights." *Id.*

8         In his Complaint, Plaintiff asserts that the decision to deny him a copy of the book violated

9    his First Amendment rights because prison officials allow prisoners to have access to other

10   materials showing frontal nudity. (Compl. ¶¶ 17-18.) However, the *Nelson* court acknowledged

11   that permitting inmates to possess sexually explicit materials under certain limited circumstances,

12   such as for educational or medical purposes, did not violate the First Amendment. *See Nelson*,

13   2006 U.S. Dist. Lexis at *11-*12. Prison officials are not required to adopt the least restrictive

14   means of achieving their legitimate objectives. *See Mauro*, 188 F.3d at 1060. Accordingly,

15   given that the regulation contains ample alternatives for inmates who seek to acquire sexually

16   explicit materials, Plaintiff's claim that Section 3006 violates the First Amendment because it

17   prohibits him from receiving "The Practical Guide to Drawing" must fail.

18        **3.    Impact on Others**

19        The third factor that must be addressed is the impact that the accommodation of the

20   asserted constitutional right would have on prison personnel, other inmates, and the allocation of

21   prison resources. *See Mauro*, 188 F.3d at 1061. The factor requires a determination of the

22   impact of allowing inmates unrestricted access to sexually explicit materials. *See id.*

23        In *Mauro*, the court found that allowing inmates to receive sexually explicit images would

24   jeopardize not only the safety of jail employees, but also other inmates. *See Mauro*, 188 F.3d at

25   1061. Such unrestricted access could lead to the bartering of sexually explicit materials and

26   anatomical comparisons that could in turn lead to fights between inmates. *See id.* The court

27   further noted that allowing inmates to possess such materials could expose female correctional

28   officers to sexual harassment and a hostile work environment. *See id.* at 1061-62.

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                                E. R. Self v. R. Horel, et al.
                                                                               C 07-5347 MMC

1    The *Nelson* court similarly found that Section 3006 met the third prong of the *Turner* test

2    because the impact of allowing inmates unrestricted access to sexually explicit materials would

3    be "significant." *See Nelson*, 2006 U.S. Dist. Lexis at *12. The court noted that such access

4    could provoke the sexual harassment of female officers and violence among inmates stemming

5    from the possession or use of such materials. *See id.*

6    **4.    Exaggerated Response**

7    The fourth and final factor that must be examined is whether the policy is an exaggerated

8    response to the prison's concerns. *See Mauro*, 188 F.3d at 1062. The burden is on the prisoner

9    challenging the regulation, not on the prison officials, to show that there are obvious, easy

10   alternatives to the regulation. *See id.*

11   The *Nelson* court concluded that Section 3006 met the fourth prong of the *Turner* test, as

12   the regulation was not an exaggerated response to the prison's legitimate concerns. *See Nelson*,

13   2006 U.S. Dist. Lexis at *13. There, the plaintiff proposed the addition of an exception to

14   Section 3006 for "non sexual" literary materials that contained "incidental" frontal nudity. *See*

15   *id.* The court rejected the plaintiff's suggestion, writing that the fourth *Turner* factor was not a

16   "least restrictive alternative" test, and that prison officials were not required to adopt the least

17   restrictive means of achieving their legitimate objectives. *See id.* Because Section 3006

18   contained several alternatives that would allow Plaintiff to acquire sexually explicit materials, the

19   court concluded that his claim that the regulation was an "exaggerated response" lacked merit.

20   *See id.*

21   In this case, Plaintiff claims that he should be allowed to have "The Practical Guide to

22   Drawing" because he has no history of sexual misconduct and plans to use it solely for

23   educational purposes. (Compl. ¶¶ 25-28.) Defendants anticipate that Plaintiff likely will contend

24   that one alternative to the policy set forth in Section 3006 would be to permit inmates who have

25   not been accused of any sexual misconduct and claim to be involved in some sort of educational

26   endeavor to possess publications that depict frontal nudity.

27   Allowing those inmates who have not previously engaged in sexual misconduct to keep

28   publications like "The Practical Guide to Drawing" would not mollify the concerns that led

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                                    E. R. Self v. R. Horel, et al.
                                                                                    C 07-5347 MMC

9

1    corrections officials to adopt Section 3006. Although inmates might not engage in sexual

2    misconduct if allowed to possess the explicit images that are currently prohibited, they could still

3    be bartered in order to obtain goods or services from other inmates, and could create a hostile

4    work environment for female officers. *See Mauro,* 188 F.3d at 1061. Moreover, as mentioned

5    above, prison officials are not obligated to adopt the least restrictive means of achieving their

6    legitimate objectives, and Section 3006 sets forth ample alternatives for inmates who want to

7    acquire sexually explicit materials. *See id.* at 1060. Accordingly, this Court should follow the

8    decision in *Nelson* and conclude that Section 3006 is not an exaggerated response to the prison's

9    legitimate concerns regarding inmate possession of sexually explicit materials.

10    **C.    Section 3006 Was Properly Applied in this Case.**

11    Section 3006 prohibits inmates from possessing sexually explicit images that depict frontal

12    nudity, including the genitalia of either gender. Cal. Code. Regs tit. 15, § 3006(c)(17)(A) (2008).

13    Plaintiff was denied a copy of "The Practical Guide to Drawing" because at least seven pages of

14    the book depicted frontal nudity. (Decl. of R. Tucker Supp. Defs.' Mot. Summ. J. (Decl. R.

15    Tucker), Ex. A at AGO-001 to AGO-007.)

16    Regulations that provide for individualized determinations as opposed to predetermined

17    categorical exclusions are likely to pass constitutional muster. *See Thornburgh,* 490 U.S. at 416-

18    17. Here, Defendants have not imposed a ban on art manuals. To the contrary, Defendants have

19    merely prohibited Plaintiff from receiving a particular art manual that contains numerous

20    photographs of nude male and female models.[2]

21    In *Nelson,* the court concluded that prison officials' determination that the plaintiff could

22    not receive copies of *Esquire* magazine that contained depictions of exposed female breasts was

23    a constitutional application of Section 3006. *See Nelson,* 2006 U.S. Dist. Lexis at *14. "The

24

25    2.    Any claim by Plaintiff that "The Practical Guide to Drawing" falls within section
      3006(c)(17)(B)(2) of Title 15, which permits inmates to possess "artistic reference material depicting

26    historical, modern, and/or post modern era art" should be rejected by this Court. Such materials
      must be approved by the "institution head or their designee on a case-by-case basis." Cal. Code.

27    Regs tit. 15, § 3006(c)(17)(B)(2) (2008). Pelican Bay officials determined that the sexually explicit
      photographs of nude male and female models in the book did not satisfy that standard. (Decl. R.

28    Tucker ¶ 4.)

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                    E. R. Self v. R. Horel, et al.
                                                                    C 07-5347 MMC

10

1 | Practical Guide to Drawing" is far more sexually explicit than the September and October 2003

2 | editions of *Esquire* that were at issue in *Nelson*, as it includes not only photographs of topless

3 | female models, but photographs of male and female genitalia. (Decl. R. Tucker, Ex. A at AGO-

4 | 001 to AGO-007.) Accordingly, because there is no genuine issue for trial regarding whether

5 | Section 3006 prohibits Plaintiff from receiving "The Practical Guide to Drawing," summary

6 | judgment should be granted in favor of Defendants.

7 | **D.    Defendants are Entitled to Qualified Immunity.**

8 |         The defense of qualified immunity protects "government officials . . . from liability for civil

9 | damages insofar as their conduct does not violate clearly established statutory or constitutional

10 | rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800,

11 | 818 (1982). The rule of qualified immunity "provides ample protection to all but the plainly

12 | incompetent or those who knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 495 (1991)

13 | (citation omitted).

14 |         When a government official is accused of a constitutional violation, a particular sequence

15 | of questions must be considered to determine if qualified immunity exits. *See Saucier v. Katz*,

16 | 533 U.S. 194 (2001). First, a court must ask: "Taken in the light most favorable to the party

17 | asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

18 | right?" *Id.* at 201. This qualified immunity analysis is distinct from the inquiry on the merits of

19 | the constitutional violation. *Id*; *see also Mitchell v. Forsyth*, 472 U.S. 511, 527-28 (1985) ("A

20 | claim of immunity is conceptually distinct from the merits of the Plaintiff's claim that his rights

21 | have been violated."). If no constitutional right was violated under the alleged facts, the inquiry

22 | ends and defendants prevail. *Saucier*, 533 U.S. at 204.

23 |         If, however, "a violation could be made out on a favorable view of the parties' submissions,

24 | the next, sequential step is to ask whether the right was clearly established. . . . 'The contours of

25 | the right must be sufficiently clear that a reasonable official would understand that what he is

26 | doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is

27 | clearly established is whether it would be clear to a reasonable officer that his conduct was

28 | unlawful in the situation he confronted." *Id.* at 201-02 (quoting *Anderson v. Creighton*, 483 U.S.

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                    E. R. Self v. R. Horel, et al.
                                                                    C 07-5347 MMC

11

1    635, 640 (1987)).

2          Moreover, it is not enough for a plaintiff to offer factually unsupported allegations. "[T]o

3    prevail on the motion for summary judgment, a plaintiff must 'put forward specific,

4    nonconclusory factual allegations' that establish improper motive causing cognizable injury."

5    *Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001) (citations omitted). Indeed, the goal of

6    qualified immunity would be undermined if a court denied summary judgment each time a

7    material issue of fact remains on an claim. *Saucier*, 533 U.S. at 202.

8          **1.      Plaintiff Has Not Shown that Defendants' Actions Violated a Constitutional**
                       **Right.**
9

10         The first step under *Saucier* is to determine whether, taken in the light most favorable to the

11   party asserting the inquiry, the facts alleged show the officer's conduct violated a constitutional

12   right. *Saucier,* 533 U.S. 194. Defendants do not dispute that prisoners have certain rights under

13   the First Amendment. However, preventing Plaintiff from receiving "The Practical Guide to

14   Drawing" did not violate his First Amendment rights, as that book falls within the purview of

15   Section 3006, which is a constitutional regulation. Under *Saucier*, the Court's inquiry should

16   end here. Therefore, Defendants respectfully request that this Court find that they are entitled to

17   qualified immunity.

18         **2.      Defendants are Entitled to Qualified Immunity Because it Would Not Have**
                       **Been Clear to Reasonable Officials that Their Conduct was Unlawful.**
19

20         Assuming arguendo that Defendants' actions are found to be unconstitutional, it would not

21   have been clear to a reasonable official that such conduct was unlawful. In *Nelson*, the court

22   stated that a reasonable official would not have known that denying the inmate access to the

23   September and October 2003 issues of *Esquire* magazine was unlawful. *See Nelson*, 2006 U.S.

24   Dist. Lexis at *33-34. Similarly, in this case, Defendants believed that their decision to prevent

25   Plaintiff from receiving "The Practical Guide to Drawing" was lawful and appropriate. Because

26   previous cases had upheld the constitutionality of Section 3006 and prison officials'

27   determinations that inmates could not possess sexually explicit images depicting frontal nudity, it

28   would not have been clear to a reasonable official that the actions of the prison officials in this

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                    E. R. Self v. R. Horel, et al.
                                                                                                          C 07-5347 MMC

                                                              12

1  case were clearly unlawful.  Thus, Defendants are entitled to qualified immunity.

2  **E.    Because Defendant Horel Was Not Directly Involved in the Decision to Prevent**
**Plaintiff From Receiving "The Practical Guide to Drawing," a Section 1983 Action**
3  **Cannot Proceed Against Him.**

4        Supervisory liability in a Section 1983 action only arises if the defendant personally

5  participated in, directed, or knew of violations and failed to correct them.  *See Taylor v. List,* 880

6  F.2d 1040, 1045 (9th Cir. 1989).  At the time that Pelican Bay officials concluded that "The

7  Practical Guide to Drawing"constituted contraband that was not permitted in the prison,

8  Defendant Horel was serving as Pelican Bay's Warden.  (Compl. ¶ 5.)  Because he did not

9  personally participate in, direct, or know of the alleged First Amendment violations that are the

10  basis of Plaintiff's lawsuit, there is no triable issue regarding his liability under Section 1983.

11  Accordingly, even if this Court concludes that the other Defendants are not entitled to summary

12  judgment in this case, summary judgment should be granted in favor of Defendant Horel.

13                          **CONCLUSION**

14        In *Nelson v. Woodford*, this Court analyzed Section 3600 and found that the regulation was

15  constitutional.  That decision confirmed that prison officials could deny inmates access to several

16  issues of *Esquire* magazine that depicted frontal nudity.

17        Like the publications at issue in *Nelson*, the "Practical Guide to Drawing" contains frontal

18  nudity that falls within the purview of Section 3600.  Because there is no triable issue regarding

19  whether Section 3600 prohibits Plaintiff from having access to the book, summary judgment

20  should be granted in favor of Defendants.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                                    E. R. Self v. R. Horel, et al.
                                                                                   C 07-5347 MMC

13

1    Moreover, even if this Court finds that *Nelson* is not applicable in this case, summary

2  judgment should be granted in favor of Defendants because they are entitled to qualified

3  immunity.

4

5        Dated: July 24, 2008

6                              Respectfully submitted,

7                              EDMUND G. BROWN JR.
                              Attorney General of the State of California

8                              DAVID S. CHANEY
                              Chief Assistant Attorney General

9
                              ROCHELLE C. EAST
10                             Acting Senior Assistant Attorney General

11                             JONATHAN L. WOLFF
                              Supervising Deputy Attorney General

12

13

14

15                             MICHAEL J. QUINN
                              Deputy Attorney General
16                             Attorneys for Defendants Horel, Tucker and Johnson

17
    20118898.wpd
18  SF2008200096

19

20

21

22

23

24

25

26

27

28

Defs.' Not. of Mot. & Mot. Summ J.; Mem. P. & A.                    E. R. Self v. R. Horel, et al.
                                                                      C 07-5347 MMC

14

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **E. R. Self v. R. Horel, et al.**

No.:   **C 07-5347 MMC**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **July 25, 2008**, I served the attached

### DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Erik Ray Self, J-87779**
**Pelican Bay State Prison**
**P.O. Box 7500**
**Crescent City, CA 95532**
Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **July 25, 2008**, at San Francisco, California.

|  |  |
|---|---|
| M.M. Argarin | _M.M. Argarin_ |
| Declarant | Signature |

20127886.wpd