EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
ROCHELLE C. EAST
Senior Assistant Attorney General
JONATHAN L. WOLFF
Supervising Deputy Attorney General
MICHAEL J. QUINN, State Bar No. 209542
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5726
  Fax: (415) 703-5843
  Email: Michael.Quinn@doj.ca.gov

Attorneys for Defendants Horel, Tucker and Johnson

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ERIK RAY SELF,<br><br>                            Plaintiff,<br><br>v.<br><br>ROBERT HOREL, Warden, R.L. JOHNSTON, Captain, R. TUCKER, Correctional Officer,<br><br>                          Defendants. | C 07-5347 MMC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT** |

Defendants Horel, Tucker and Johnson submit their Reply in Support of the Motion for Summary Judgment.

I.

**INTRODUCTION**

In his Opposition to the Motion for Summary Judgment, Plaintiff asserts that because "The Practical Guide to Drawing" features "educational/artistic nudity" rather than pornographic nudity, Pelican Bay officials should have allowed him to receive that book under section 3006(c)(17)(B)(2) of Title 15 (Section 3006(c)(17)(B)(2)). That section allows inmates to

Reply in Supp. of Mot. Summ J.                                              E. R. Self v. R. Horel, et al.
                                                                               C 07-5347 MMC

1

possess sexually explicit "artistic reference material depicting historical, modern, and/or post modern era art" under certain circumstances. He further argues that prior decisions involving the issue of whether inmates can possess sexually explicit materials are distinguishable from this case, and that an analysis of the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987), demonstrates that prison officials did not have a legitimate penological interest in preventing him from accessing the publication.

Plaintiff's argument relies on flawed interpretations of both Title 15 of the California Code of Regulations and prior case law. Under Section 3006(c)(17)(B)(2), artistic reference materials must be approved by the "institution head or their designee on a case-by-case basis." Cal. Code. Regs tit. 15, § 3006(c)(17)(B)(2) (2008). The Pelican Bay officials' determination that the sexually explicit photographs of nude male and female models in "The Practical Guide to Drawing" did not amount to "artistic reference materials" was constitutional.

Moreover, an analysis of the prior cases involving inmates' efforts to obtain sexually explicit materials and the *Turner* factors establish that the decision by Pelican Bay officials to prevent Plaintiff from accessing the publication did not violate the First Amendment. Accordingly, Defendants are entitled to summary judgment in this case.

## II.

## ARGUMENT

### A. Plaintiff's Assertion that He is Entitled to Possess "The Practical Guide to Drawing" Under the California Code of Regulations is Meritless.

Section 3006(c)(17)(B)(2) provides that inmates are allowed to possess sexually explicit material set forth in "educational . . . or artistic materials, including, but not limited to . . . artistic reference material depicting historical, modern, and/or post modern era art, purchased or possessed by inmates and approved by the institution head or their designee on a case-by-case basis."

Plaintiff claims that because "The Practical Guide to Drawing" features "educational/artistic nudity" and "non-pornographic nudity," he has a right to view the material under Section 3006(c)(17)(B)(2). (Opp'n 4:14-19.) According to Plaintiff, prison officials have ignored the

Reply in Supp. of Mot. Summ J.                                      E. R. Self v. R. Horel, et al.
                                                                    C 07-5347 MMC

2

1  book's "educational value facter (sic)." (Opp'n 8:13-19.) However, in reviewing "The Practical
2  Guide to Drawing," Pelican Bay officials determined that the publication was not an educational
3  or artistic publication and therefore did not fall within that provision of the California Code of
4  Regulations. For example, the denial of Plaintiff's appeal at the first formal level observed that
5  "The Practical Guide to Drawing" violated Section 3006 by depicting "the frontal nudity of both
6  the female and the male body, [and] exposing full detailed genitalia of both sexes in the form of
7  photographs, not artistic renderings." (Compl. Ex. 1.)

In *Mauro v. Arpaio*, 188 F.3d 1054, 1058 (9th Cir. 1999), the court noted that "[p]rison administration is . . . a task that has been committed to the responsibility of [the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint." Here, prison officials concluded that the book was not merely an art manual to be used for educational purposes. (Compl. ¶ 9.) To the contrary, the book actually contained sexually explicit images that fell within the purview of Section 3600(c)(17)(A), a regulation that has previously been found to be constitutional. *See Nelson v. Woodford*, No. C-04-3684 CRB (PR), 2006 U.S. Dist. Lexis 11120 (N.D. Cal. Mar. 2, 2006), *aff'd* 249 Fed. Appx. 529 (9th Cir. 2007). A finding in favor of Plaintiff would not only be inconsistent with the *Mauro* and *Nelson* decisions, but would unnecessarily perpetuate "the involvement of federal courts in affairs of prison administration." *Mauro*, 188 F.3d at 1058.

**B.    Plaintiff's Attempt to Distinguish the Holdings in *Mauro* and *Nelson* From This Case is Unpersuasive.**

As mentioned in Defendants' moving papers, the *Mauro* court found that a jail policy that banned "materials that show frontal nudity," including "personal photographs, drawings, and magazines and pictorials that show frontal nudity," was constitutional. *Id.* at 1059-63. Moreover, in *Nelson*, the court concluded that prison officials' determination that the plaintiff could not receive copies of *Esquire* magazine that contained depictions of exposed female breasts was a constitutional application of Section 3006. *See Nelson*, 2006 U.S. Dist. Lexis at *14.

Plaintiff's argument that those decisions are distinguishable from this case because the

Reply in Supp. of Mot. Summ J.                                          E. R. Self v. R. Horel, et al.
                                                                        C 07-5347 MMC

1  *Nelson* decision did not discuss Pelican Bay's airing of educational videos that contain nudity,
2  and because the *Mauro* court dealt with *Playboy* magazine, should be rejected by this Court.
3  (Opp'n 3:4-17.) The *Nelson* court acknowledged that permitting inmates to possess sexually
4  explicit materials under certain limited circumstances, such as for educational or medical
5  purposes, did not violate the First Amendment. *See Nelson*, 2006 U.S. Dist. Lexis at *11-*12.
6  Accordingly, Pelican Bay's airing of educational videos that depict, among other things, "frontal
7  nudity in the form of statues," while denying inmates access to sexually explicit publications like
8  "The Practical Guide to Drawing" does not infringe upon Plaintiff's First Amendment rights.
9  (Decl. of J. Ruiz Opp. Defs.' Mot. Summ. J. ¶ 6.)

10  Moreover, the decision in *Mauro* was not limited to magazines like *Playboy*. That court
11  held that the ban on all sexually explicit materials, including publications like *Playboy*, was
12  neutral and constitutional because jail administrators drew a distinction between materials solely
13  on the basis of their potential effect on the jail's legitimate objectives, such as maintaining jail
14  security. *See Mauro,* 188 F.3d at 1059-60. Similarly, as in *Mauro*, Pelican Bay officials have
15  banned sexually explicit materials that depict frontal nudity in order to maintain security and
16  reduce the sexual harassment of female officers. *See Nelson*, 2006 U.S. Dist. Lexis at *10.
17  Therefore, the decision to prevent Plaintiff from receiving a sexually explicit publication like
18  "The Practical Guide to Drawing" was constitutional, as it was consistent with the holdings in
19  *Mauro* and *Nelson*.

20  **C.  Plaintiff's Analysis of the Four *Turner* Factors Fails to Consider the Applicable Case Law.**
21

22  The Supreme Court in *Turner v. Safley*, 482 U.S. 78, 89-90 (1987), identified four factors
23  that must be analyzed when determining whether a regulation is reasonably related to legitimate
24  penological interests: (1) whether there is a valid, rational connection between the policy and the
25  legitimate governmental interest put forward to justify it; (2) whether there are alternative means
26  of exercising the right; (3) whether the impact of accommodating the asserted constitutional right
27  will have a significant negative impact on prison guards, other inmates and the allocation of
28  prison resources generally; and (4) whether the policy is an "exaggerated response" to the

Reply in Supp. of Mot. Summ J.                                              E. R. Self v. R. Horel, et al.
                                                                                                                     C 07-5347 MMC

4

prison's concerns.

As discussed below, Plaintiff's analysis of the factors set forth in *Turner* is meritless and should be rejected by this Court.

### 1. Rational Connection

Plaintiff claims that while a "rational connection" exists between pornography and harassment, the connection does not apply to "educational/artistic" nudity. (Opp'n 4:17-19.) Plaintiff also argues that it is the "mentallity (sic) of the individual which determines if that person is willing to act in a vulgar manner, not the material at hand." (*Id.* 4:19-23.)[1]

The distinction between pornography and artistic nudity, as well as Plaintiff's speculation regarding the factors that lead a person to "sexually misbehave," finds no support in the case law. Instead, both the *Mauro* and *Nelson* courts determined that there was a valid, rational connection between Section 3006 and the legitimate governmental interest put forward to justify it, namely, maintaining security and reducing sexual harassment of female officers. *See Mauro,* 188 F.3d at 1059-60; *Nelson,* 2006 U.S. Dist. Lexis at *10. In this case, because "The Practical Guide to Drawing" contains sexually explicit images that fall within Section 3600, the decision by Pelican Bay officials to deny Plaintiff access to the publication was constitutional.

### 2. Alternative Avenues

Plaintiff's assertion that prison officials could remove the pages that depict frontal nudity and allow prisoners to keep the remaining portions of the book is also meritless. (Opp'n 5:13-18.) Prison officials are not required to adopt the least restrictive means of achieving their legitimate objectives. *See Mauro,* 188 F.3d at 1060. As discussed in Defendants' moving papers, the regulation contains ample alternatives for inmates who seek to acquire sexually explicit materials, as they can receive sexually explicit letters, articles or photographs of clothed

---

1. Plaintiff further contends that Defendants' ex parte motion to seal confidential documents should be denied because the materials in the book would not endanger the safety of the institution. However, because Plaintiff is not permitted to possess "[s]exually explicit images that depict frontal nudity in the form of personal photographs, drawings, magazines, or other pictorial format," the images should be reviewed *in camera* and sealed for 50 years. If the ex parte motion is denied, Defendants request that the Court return the documents in their sealed condition. Plaintiff should not be given access to the sealed documents.

Reply in Supp. of Mot. Summ J.                                          E. R. Self v. R. Horel, et al.
                                                                         C 07-5347 MMC

1  individuals. *See Nelson*, 2006 U.S. Dist. Lexis at *11.

2      **3.  Impact on Others**

3  Plaintiff's contention that possessing "The Practical Guide to Drawing" would have "no
4  impact on others" is not supported by the case law. In *Mauro*, the court held that permitting
5  inmates to receive sexually explicit images would jeopardize not only the safety of jail
6  employees, but also other inmates. *See Mauro*, 188 F.3d at 1061. The *Nelson* court stated that
7  access to explicit materials could provoke harassment of female guards and violence among
8  inmates. *See Nelson*, 2006 U.S. Dist. Lexis at *12. Accordingly, Plaintiff's claim that allowing
9  inmates to have access to explicit materials will have no impact on others is not credible.

10      **4.  Exaggerated Response**

11  In his Opposition, Plaintiff also asserts that the policy is exaggerated because inmates can
12  occasionally view frontal nudity on television programming that is broadcast throughout Pelican
13  Bay. (Opp'n 6:24-7:21.) However, such programming is permitted under Section
14  3006(c)(17)(B)(2) of Title 15, which states that inmates can possess "sexually explicit material . .
15  . approved by the institution head or their designee on a case-by-case basis." The determination
16  by Pelican Bay officials that certain educational videos can be viewed by inmates but sexually
17  explicit photographs of nude male and female models are prohibited does not violate the First
18  Amendment. *See Nelson*, 2006 U.S. Dist. Lexis at *11-12.

19  **D.  Plaintiff's Argument Regarding Qualified Immunity is Unpersuasive.**

20  Plaintiff's assertion that Defendants are not entitled to qualified immunity is unconvincing.
21  Given that both the *Mauro* and *Nelson* decisions upheld prison officials' determinations that
22  inmates could not possess sexually explicit images depicting frontal nudity, it would not have
23  been clear to a reasonable official that the actions of the prison officials in this case were clearly
24  unlawful. Thus, Defendants are entitled to qualified immunity.

25  **E.  The Section 1983 Action Cannot Proceed Against Horel.**

26  According to Plaintiff, because he reviewed Plaintiff's second level appeal, Defendant Horel
27  is "subject to this suit." (Opp'n 10:10.) However, supervisory liability in a Section 1983 action
28  only arises if the defendant personally participated in, directed, or knew of violations and failed

Reply in Supp. of Mot. Summ J.                                      E. R. Self v. R. Horel, et al.
                                                                                                            C 07-5347 MMC

to correct them. *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989). Here, the decision in connection with Plaintiff's second level appeal was signed by an associate warden, not Defendant Horel. Accordingly, because he did not personally participate in, direct, or know of the alleged First Amendment violations that are the basis of Plaintiff's lawsuit, there is no triable issue regarding his liability under Section 1983.

## III.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.

Dated: August 20, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DAVID S. CHANEY
Chief Assistant Attorney General

ROCHELLE C. EAST
Senior Assistant Attorney General

JONATHAN L. WOLFF
Supervising Deputy Attorney General

/s/ Michael J. Quinn

MICHAEL J. QUINN
Deputy Attorney General
Attorneys for Defendants Horel, Tucker and Johnson

20133438.wpd
SF2008200096

Reply in Supp. of Mot. Summ J.

E. R. Self v. R. Horel, et al.
C 07-5347 MMC

# DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **E. R. Self v. R. Horel, et al.**

No.:   **C 07-5347 MMC**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **August 20, 2008,** I served the attached

## DEFENDANTS' REPLY IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Erik Ray Self, J-87779**
**Pelican Bay State Prison**
**P.O. Box 7500**
**Crescent City, CA 95532**
Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **August 20, 2008**, at San Francisco, California.

| M.M. Argarin | *M.M. Argarin* |
|---|---|
| Declarant | Signature |

20133498.wpd