IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK RAY SELF,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ROBERT HOREL, Warden, R.L.<br>JOHNSTON, Captain, R. TUCKER,<br>Correctional Officer,<br><br>　　　　　Defendants.<br>_____ | No. C 07-5347 MMC (PR)<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 11)** |

　　　On October 19, 2007, plaintiff, a California prisoner incarcerated at Pelican Bay State Prison ("PBSP") and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983. The Court, upon finding plaintiff's allegations stated a cognizable claim for the violation of his First Amendment rights, ordered the complaint served and directed defendants to file a dispositive motion or, alternatively, indicate they were of the opinion that plaintiff's claims could not be resolved by such a motion.

　　　Now before the Court is the motion for summary judgment filed by defendants. Plaintiff has filed opposition, and defendants have filed a reply.

//
//
//
//

## BACKGROUND[1]

At all times relevant to the allegations in the complaint, plaintiff was confined in the Security Housing Unit ("SHU") at PBSP, and defendant R. Tucker ("Tucker") was a Property Officer at the SHU. As a Property Officer, Tucker's responsibilities include reviewing publications purchased by inmates in order to determine whether the items are allowed in prison. (Decl. R. Tucker Supp. Mot. Summ. J. ("Tucker Decl.") ¶ 1.) In particular, Tucker reviews publications for compliance with prison regulations that govern contraband, which include a regulation that prohibits inmates from possessing "[s]exually explicit images that depict frontal nudity in the form of personal photographs, drawings, magazines, or other pictorial format." Cal. Code Regs, tit. 15, § 3006(c)(17).[2] (Tucker Decl. ¶ 2.) Sexually explicit material is defined as "material that shows the frontal nudity of either gender, including the exposed female breast(s) and/or the genitals of either gender." CCR § 3006(c)(17)(A). (Id.)

On April 19, 2007, Tucker reviewed several books that plaintiff had ordered from an outside vendor, including "The Practical Guide to Drawing." During her review, Tucker discovered that at least seven pages of "The Practical Guide to Drawing" depicted explicit images of frontal nudity, including exposed female breasts and male and female genitalia. (Tucker Decl. ¶ 3.) Tucker then informed plaintiff by institutional mail that, under CCR § 3006(c)(17), "The Practical Guide to Drawing" would not be allowed into the prison. (Id. ¶ 4; Compl. ¶ 8.)

Thereafter, plaintiff submitted an inmate appeal, claiming CCR § 3006(c)(17) had been misapplied because "The Practical Guide to Drawing" was an "educational/art book." (Compl. Ex. 4.) Plaintiff's appeal was denied by Tucker at the informal level of review.

---

[1] The following facts are undisputed and are derived from plaintiff's verified complaint and the parties' exhibits. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (holding verified complaint may be used as opposing affidavit under Rule 56 if based on personal knowledge and sets forth specific facts admissible in evidence).

[2] Unless otherwise noted, all further references to code sections are to title 15 of the California Code of Regulations, hereinafter "CCR."

(Compl. ¶ 11 & Ex. 4.) Tucker denied the appeal on the grounds that plaintiff was not enrolled in an educational art class, PBSP SHU does not run an Art/Handicraft program, and the book contained frontal nudity in violation of CCR § 3006. (Id.)

Plaintiff challenged the informal decision by submitting his appeal to the first formal level of review. (Compl. ¶ 12 & Ex. 4.) Defendant Captain R.L. Johnson ("Johnson") denied the appeal on the grounds that "The Practical Guide to Drawing" violated CCR § 3006(c)(17) because it depicted frontal nudity in the form of photographs, not artistic renderings, and did not meet the criteria of PBSP Operational Procedure ("OP") No. 806, which provides that inmates may receive Correspondence Course materials that have been approved by prison officials. (Compl. ¶ 12 & Ex. 1 First Level Review.)

Plaintiff next sought review at the second formal level. (Compl. ¶ 13 & Ex. 4.) Defendant Warden Robert Horel ("Horel") denied the appeal, finding "The Practical Guide to Drawing" had not been approved as required educational material for a correspondence course, and "it is deemed to not contain artistic reference material depicting historical, modern, and/or post modern era art" under CCR § 3006(c)(17)(B)(2).[3] (Compl. ¶ 14 & Ex. 1 Second Level Review.)

Plaintiff thereafter submitted his appeal to the Director's level of review. (Compl. ¶ 15 & Ex. 4.) The appeal was denied on the ground that plaintiff had properly been denied access to the "The Practical Guide to Drawing" under departmental regulations. (Compl. Ex. 1 Director's Level Review.)

Inmates at PBSP are allowed to have access to certain materials depicting frontal nudity. Specifically, PBSP offers televised college courses and a televised art program that

---

[3] CCR § 3006(c)(17)(B)(2) provides that inmates shall be allowed access to the following sexually explicit material:

> Educational, medical/scientific, or artistic materials, including, but not limited to, anatomy medical reference books, general practitioner reference books and/or guides, National Geographic, or artistic reference material depicting historical, modern, and/or post modern era art, purchased or possessed by inmates and approved by the institution head or their designee on a case-by-case basis.

3

depict frontal nudity. (Compl. ¶¶ 17-18.) Subsequent to his entry into the California Department of Corrections and Rehabilitation ("CDCR") in 1996, plaintiff has had access to material depicting frontal nudity, and has at no time acted in a manner that would suggest such items would pose a security threat if in plaintiff's possession. (Compl. ¶ 16.)

Plaintiff claims defendants' refusal to allow him to possess "The Practical Guide to Drawing" violates his First Amendment rights. He seeks injunctive relief and monetary damages.

## DISCUSSION

A.   Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (citing Fed. R.

4

Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

B. Analysis

Plaintiff claims defendants' disallowing his possession of "The Practical Guide to Drawing" pursuant to CCR § 3006(c)(17) violates his First Amendment rights on two grounds: (1) the regulation is unconstitutional on its face because it disallows educational and artistic materials that depict frontal nudity, and (2) the regulation was unconstitutionally applied to plaintiff, because defendants wrongly determined "The Practical Guide to Drawing" was not educational or artistic material.

Prisoners retain those First Amendment rights not inconsistent with their status as prison inmates or with legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974). Consequently, regulations limiting prisoners' access to publications or other information are valid only if they are "reasonably related to legitimate penological interests." Thornburgh v. Abbott, 490 U.S. 401, 413 (1989). In Turner v. Safley, 482 U.S. 78 (1987), the Supreme Court identified four factors for courts to consider when determining whether a regulation is reasonably related to legitimate penological interests: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives,"

5

in other words, whether the rule at issue is an "exaggerated response to prison concerns." Id. at 89-90.

### 1. The Regulation

As noted, CCR § 3006(c)(17) bans: "Sexually explicit images that depict frontal nudity in the form of personal photographs, drawings, magazines or other pictorial format." The regulation defines sexually explicit material as "material that shows the frontal nudity of either gender, including the exposed female breast(s) and/or the genitalia of either gender." Id. § 3006(c)(17)(A). The regulation also provides, however, that inmates shall be allowed access to the following sexually explicit material:

> Educational, medical/scientific, or artistic materials, including, but not limited to, anatomy medical reference books, general practitioner reference books and/or guides, National Geographic, or artistic reference material depicting historical, modern, and/or post modern era art, purchased or possessed by inmates and approved by the institution head or their designee on a case-by-case basis.

Id. § 3006(c)(17)(B)(2).

Defendants argue the regulation is constitutional because, under Turner, it is reasonably related to legitimate penological interests. In support of their argument, defendants rely on Mauro v. Arpaio, 188 F.3d 1059-63 (9th Cir. 1999) (en banc), in which the en banc court of the Ninth Circuit found a jail policy banning materials depicting frontal nudity passed constitutional muster because it met all four prongs of the Turner test. Additionally, defendants rely on Nelson v. Woodford, No. C 04-03684 CRB (PR), 2006 WL 571359, at *3-5 (N.D. Cal. Mar. 2, 2006), in which the district court applied Mauro to find CCR § 3306(c)(17) is constitutional because it is reasonably related to legitimate penological interests. On appeal, the Ninth Circuit affirmed the district court's ruling in Nelson, holding: "The district court properly concluded that the regulations prohibiting Nelson's possession of obscene or sexually explicit material, 15 Cal. Code Reg. §§ 3006(c)(15) & (17), respectively, are constitutional because the regulations' underlying policies are reasonably related to legitimate penological interests." Nelson v. Woodford, 249 Fed. Appx. 529, 530 (9th Cir. 2007).

6

In opposition, plaintiff contends Mauro and Nelson are inapposite because Mauro addressed an inmate's access to Playboy magazine, and Nelson, which concerned a claim brought by an inmate incarcerated at PBSP, did not address as an issue the fact that PBSP allows the airing of educational and artistic videos that include frontal nudity.

Contrary to plaintiff's assertions, the Court finds Mauro and Nelson directly relevant to the instant case. The regulation at issue in Mauro was not limited to magazines such as Playboy but, rather, provided, as does CCR § 3006(c)(17), a ban on all materials depicting frontal nudity. See Mauro, 188 F. 3d at 1058. Further, the district court in Nelson, in finding CCR § 3006(d)(17) does not violate the First Amendment, acknowledged that PBSP inmates are permitted to possess sexually explicit materials under certain limited circumstances, such as for educational or medical purposes. See Nelson, 2006 WL 571359, at *4.

The Court next considers the four Turner factors with respect to the constitutionality of CCR § 3006(c)(17).

### a. Rational Connection

In considering, under the first prong of the Turner test, whether there is a rational connection between a challenged policy and a legitimate governmental interest, a court must determine "whether the governmental objective underlying the policy is (1) legitimate, (2) neutral, and (3) whether the policy is rationally related to that objective." Mauro, 88 F.3d at 1059 (internal quotation and citation omitted.).

Defendants argue the frontal nudity policy set forth in CCR § 3006(c)(17) is rationally related to the legitimate governmental objectives of maintaining security, rehabilitating inmates, reducing sexual harassment of female officers, and avoiding a hostile work environment. See Compl. Ex. 1 (Director's Level Appeal Decision, explaining objectives of CCR § 3006(c)(17)); see also Nelson, 2006 WL 571359, at *3 (defining objectives of CCR § 3006(c)(17)); Snow v. Woodford, 128 Cal. App. 4th 383, 391, review denied, (Jul. 27, 2005) (same). In opposition, plaintiff argues (1) there is no rational connection between defendants' asserted governmental objectives and applying the frontal nudity policy to educational and artistic materials, and (2) the policy is not legitimate because it does not take

into account the individual characteristics of prisoners seeking access to the materials. The Court disagrees.

First, the Court finds the governmental objectives underlying CCR § 3006(c)(17), specifically, maintaining the safety and security of the prisons, rehabilitating inmates, reducing sexual harassment of correctional officers and preventing a hostile work environment, are legitimate. See Nelson, 2006 WL 571359, at *3; accord Snow, 128 Cal. App. 4th at 391; see also Mauro, 188 F.3d at 1059 (finding objectives of maintaining jail security, rehabilitating inmates and reducing sexual harassment of female detention officers to be legitimate).

The Court further finds the policy is neutral. A regulation restricting access to certain types of publications is neutral if it furthers an important or substantial governmental interest unrelated to the suppression of expression. See Thornburgh, 490 U.S. at 415-16. Here, CCR § 3006(c)(17) is neutral, because it draws distinctions between materials solely on the basis of the materials' potential effect on the prison's legitimate objectives, specifically, prison security, rehabilitation of inmates, and preventing the harassment of female correctional officers. See Nelson, 2006 WL 571359, at * 4; accord Snow, 128 Cal. App. 4th at 391 (finding reasons for adoption of CCR § 3006(c)(17) unrelated to suppression of expression and related to enhancement of prison security).

Finally, the Court finds there is a rational relationship between the ban on materials depicting frontal nudity, as set forth in CCR § 3006(c)(17), and the legitimate governmental objectives put forth to justify it. See Nelson, 2006 WL 57139, at *4; accord Snow, 128 Cal. App. 4th at 391; see also Mauro, 188 F.3d at 1060 (holding relationship between policy banning materials showing frontal nudity and jail's objectives rational even if "fit" not "exact," because "[t]he relationship between the jail's policy of prohibiting the possession of sexually explicit materials and the goals of preventing sexual harassment of the female officers, inmate rehabilitation and maintenance of jail security is not so remote as to render the policy arbitrary or irrational").

b. <u>Alternative Means of Exercising Right</u>

The second factor to be considered under <u>Turner</u> is whether there exist alternative means of exercising the right that remain open to prisoners. <u>Mauro</u>, 188 F.3d at 1061. "Where 'other avenues' remain available for the exercise of the asserted right, courts should be particularly conscious of the 'measure of judicial deference owed to correctional officials . . . in gauging the validity of the regulation.'" <u>Id.</u> (quoting <u>Turner</u>, 482 U.S. at 90.)

Defendants argue CCR § 3006(c)(17) meets the second <u>Turner</u> factor because the regulation does not ban all sexually explicit materials. In opposition, plaintiff maintains that defendants should provide alternative means of access to banned materials by removing the pages that depict frontal nudity and allowing prisoners to keep the remaining portions of the materials at issue.

Prison officials are not required to adopt the least restrictive means of achieving their legitimate objectives. <u>See</u> <u>Mauro</u>, 188 F.3d at 1060. The Court finds the regulation at issue herein, which expressly allows inmates to possess certain sexually explicit educational, medical/scientific, and artistic materials, <u>see</u> CCR § 3006(c)(17)(B), provides ample alternative means for inmates to express their First Amendment right to access sexually explicit materials that do not pose a threat to defendants' legitimate governmental interests. <u>See</u> <u>Nelson</u>, 2006 WL 571359, at *4 (finding CCR § 3006(c)(17) satisfies second prong of <u>Turner</u> test because, as with policy at issue in <u>Mauro</u>, ban "does not include sexually explicit letters, articles or photographs of clothed person(s)," and allows certain sexually explicit materials under CCR § 3006(c)(17)(B)); <u>accord</u> <u>Snow</u>, 128 Cal. App. 4th at 393.

c. <u>Impact of Accommodation</u>

The third <u>Turner</u> factor is a determination of the impact the accommodation of the asserted constitutional right would have on prison personnel, other inmates, and the allocation of prison resources. <u>Mauro</u>, 188 F.3d at 1061. As relevant to the instant challenge, the Court must assess the impact of allowing inmates unrestricted access to sexually explicit materials. <u>Id.</u>

Defendants argue that allowing inmates unrestricted access to sexually explicit

9

materials could jeopardize the safety of prison personnel by provoking harassment of female guards and violence among inmates stemming from the possession or use of such materials. In opposition, plaintiff contends his possession of the "The Practical Guide to Drawing" would have no impact on others.

Even if, as plaintiff argues, his possession of "The Practical Guide to Drawing" in this one instance would not impact prison personnel or other inmates, such argument does not take into account the negative impact on prison personnel and other inmates of allowing all prisoners at PBSP unrestricted possession of sexually explicit materials. As found by both the district court in Nelson and the California Court of Appeal in Snow, allowing inmates unrestricted access to sexually explicit materials has a significant negative impact on female correctional officers because of harassment, and on inmates and correctional officers because of the potential for violence. See Nelson, 2006 WL 571359, at *4; Snow, 128 Cal. App. 4th at 393; see also Mauro, 188 F.3d at 1061 (finding significant negative impact if inmates afforded unrestricted access to sexually explicit materials, because such access "could lead to the bartering of sexually explicit materials and anatomical comparisons which could in turn lead to fights between inmates"). The Court finds the accommodation sought by plaintiff, the unrestricted possession of sexually explicit materials, would have a significant negative impact on PBSP personnel, other inmates, and the allocation of prison resources.

d.  Exaggerated Response

The fourth and final Turner factor to be considered is whether the policy is, in effect, an "exaggerated response" to the prison's concerns. See Mauro, 188 F.3d at 1062. In that regard, the burden is on the prisoner challenging the regulation, not on prison officials, to show there are obvious, easy alternatives to the regulation. Id.

Plaintiff claims CCR § 3006(c)(17) is an exaggerated response to defendants' concerns because the regulation does not take into account the individual characteristics of the inmates seeking access to sexually explicit materials. Specifically, plaintiff argues, there is no reason that inmates like plaintiff, who have not been accused of any sexual misconduct and plan to use sexually explicit materials solely for educational purposes, should be denied

10

1 such materials.  Additionally, plaintiff points out, inmates already are allowed to view frontal
2 nudity on television programming that is broadcast at PBSP.

3       In response, defendants argue that allowing inmates who have not previously engaged
4 in sexual misconduct to keep publications like "The Practical Guide to Drawing" would not
5 obviate the concerns that led to the adoption of CCR § 3306(c)(17).  In particular, while
6 those inmates might not engage in sexual misconduct if allowed to possess sexually explicit
7 materials that currently are prohibited, such materials could be bartered to obtain goods or
8 services from other inmates, and could create a hostile work environment for female officers.
9 See Mauro, 188 F.3d at 1061.  Further, defendants argue, the regulation is not an exaggerated
10 response simply because it allows an exception for inmates to view sexually explicit artistic
11 and educational materials that have been approved by prison officials on a case-by-case
12 basis.

13       As noted, prison officials are not required to adopt the least restrictive means of
14 achieving their legitimate objectives.  See Mauro, 188 F.3d at 1063.  The Court finds the ban
15 on frontal nudity set forth in CCR § 3306(c)(17) is not an exaggerated response to
16 defendants' legitimate penological concerns, in that the regulation bans those materials
17 deemed most likely to negatively impact prison personnel and other inmates, but does allow
18 inmates to have access to certain sexually explicit materials, such as sexually explicit letters,
19 articles or photographs of clothed persons, and educational and artistic materials under
20 CCR § 3006(c)(17)(B).  See Nelson, 2006 WL 571359, at *4 (holding CCR § 3006(c)(17)
21 not subject to challenge under fourth Turner factor; noting regulation contains ample
22 alternatives for prisoners to acquire sexually explicit materials).

23       Lastly, plaintiff has failed to provide a ready alternative to CCR § 3006(c)(17) that
24 would accommodate defendants' legitimate penological objectives.  Consequently, plaintiff
25 has not carried his burden as to the fourth Turner factor.  See Snow, 128 Cal. App. 4th at 393
26 (finding prisoner who failed to show any alternatives to CCR § 3006(c)(17) did not meet
27 burden).

28       In sum, for the reasons stated above, the Court concludes CCR § 3006(c)(17) is

11

reasonably related to legitimate penological interests, see Thornburgh, 490 U.S. at 413, and, accordingly, that said regulation does not violate the First Amendment.

2.      Application of the Regulation

Having found CCR § 3006(c)(17) is not unconstitutional on its face, the Court next considers whether defendants, in denying plaintiff access to "The Practical Guide to Drawing," applied the regulation in an unconstitutional manner.

Section 3006(c)(17) prohibits inmates from possessing sexually explicit images that depict frontal nudity, including male and female genitalia. CCR § 3006(c)(17)(A). Plaintiff was denied a copy of "The Practical Guide to Drawing" because at least seven pages of the book depicted frontal nudity. (Tucker Decl. ¶ 3; Ex. A (Filed Under Seal) at AGO-001 to AGO-007.) There is no factual dispute as to the nudity depicted in the book. Rather, plaintiff argues, defendants wrongly determined that "The Practical Guide to Drawing" was not "educational" or "artistic" material under CCR § 3006(c)(17)(B)(2). As noted, that subsection provides that the following sexually explicit material shall be allowed:

> Educational, medical/scientific, or artistic materials, including, but not limited to, anatomy medical reference books, general practitioner reference books and/or guides, National Geographic, or artistic reference material depicting historical, modern, and/or post modern era art, purchased or possessed by inmates and approved by the institution head or their designee on a case-by-case basis.

CCR § 3006(c)(17)(B)(2).

Here, defendants determined that "The Practical Guide to Drawing" did not meet the above-listed exceptions because (1) it had not been approved as required educational material for a correspondence course, (2) it depicted frontal nudity in the form of photographs, not artistic renderings, and, (3) it did not "contain artistic reference material depicting historical, modern, and/or post modern era art." (Compl. Ex. 1 Second Level Review.) Plaintiff does not contest defendants' determinations; rather, he argues defendants should have allowed him to possess "The Practical Guide to Drawing" because it has educational and artistic value.

Prison officials are to be provided broad discretion to determine what publications may enter a prison. See Thornburgh, 490 U.S. at 416. Regulations that provide for

12

individualized determinations as opposed to predetermined categorical exclusions strike an acceptable balance between the prison's legitimate governmental objectives and prisoners' First Amendment rights. See id. at 416-17 & n. 15. Here, CCR § 3006(c)(17) provides for individualized determinations as to what sexually explicit materials inmates may possess. Even if, as plaintiff argues, "The Practical Guide to Drawing" has some educational and/or artistic value, it was neither arbitrary nor irrational for defendants to deny plaintiff access to the publication. See Mauro, 188 F.3d at 1060. While CCR § 3006(c)(17)(B)(2) allows inmates to possess some sexually explicit materials, it does not require that inmates be allowed to possess sexually explicit material solely because it is deemed to have educational or artistic value. Further, defendants' decision did not deprive plaintiff of the right to possess either educational art materials that do not contain frontal nudity, or that meet the requirements of CCR § 3006(c)(17)(B)(2). In sum, defendants' individualized determination to ban "The Practical Guide to Drawing" was a constitutional application of CCR § 3006(c)(17). See Nelson, 2006 WL 571359, at *5 (finding prison officials' individualized determination to preclude prisoner from receiving copies of Esquire magazine depicting frontal nudity was constitutional application of CCR § 3006(c)(17)).

3. Summary

As discussed above, the Court finds CCR § 3006(c)(17), which bans the possession by inmates of sexually explicit materials containing frontal nudity, does not violate the First Amendment, because said regulation is reasonably related to legitimate penological interests. The Court further finds defendants' individualized determination to preclude plaintiff's possession of "The Practical Guide to Drawing" was a constitutional application of that regulation. As there is no triable issue with respect to whether plaintiff was properly denied access to "The Practical Guide to Drawing," summary judgment will be granted in favor of defendants.[4]

---

[4] In light of the finding that no constitutional violation occurred, the Court does not reach defendants' argument based on qualified immunity. See Saucier v. Katz, 533 U.S. 194, 202 (2001) ("If no constitutional right would have been violated were the allegations

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is hereby GRANTED and judgment in favor of defendants shall be entered.

This order terminates Docket No. 11.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: November 24, 2008

_____
MAXINE M. CHESNEY
United States District Judge

---

established, there is no necessity for further inquiries concerning qualified immunity.")